IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TIFFANY HAGEN, as Personal
Representative for the ESTATE OF
MICHAEL CLARENCE HAGEN,**

        Plaintiff,

v.

**MAX WILLIAMS, individually; MITCH
MORROW, individually; MARK NOOTH,
individually; JUDY GILMORE,
individually; JAMES EASTWOOD,
individually; RANDY GILBERTSON,
individually, JOSE DELGADO,
individually; JOHN GILLUM, individually;
DONALD HARRIS, individually; JOHN
DOE 1-10, individually,**

        Defendants.

**Civ. No. 6:14-cv-00165-MC**

**OPINION AND ORDER**

**MCSHANE, Judge:**

Michael Hagen was an inmate at the Snake River Correctional Institute (SRCI).[1]

Between October 2011 and January 2012, Hagen repeatedly notified Department of Corrections

(DOC) officers and staff that he was being targeted by a white supremacist gang of which fellow

---

[1] The court takes all relevant facts in this opinion from the allegations in the amended complaint, ECF No. 19.

1 – OPINION AND ORDER

inmate Terry Lapich was a member. DOC officials acknowledged the threat to Hagen and approved a transfer to another prison. Instead of being transferred directly from a segregated unit to a new prison, DOC officers transferred Hagen to Lapich's cell. Less than two hours later, on February 2, 2012, Hagen had been so severely beaten that despite being airlifted to a hospital, he died the next day.

I am asked to consider first whether Plaintiff's allegations support a claim of supervisory liability, and second whether some of Plaintiff's claims are time-barred. Because Plaintiff has failed to allege facts connecting the supervisors to Hagen's death, the claims against the supervisors are dismissed. Because the amended complaint's claims against the individual DOC officers at SRCI do not relate back to the original claims, those claims are untimely. Defendants' motion to dismiss is GRANTED.[2]

## **PROCEDURAL BACKGROUND**

Plaintiff Tiffany Hagen is the duly appointed personal representative of Michael Hagen's estate and also Michael Hagen's widow. Plaintiff filed the original complaint on January 30, 2014, against supervisor Defendants Max Williams, Mitch Morrow, Mark Nooth, Judy Gilmore, and 10 John Doe DOC employees. On May 22, 2014, Plaintiff filed an amended complaint adding Defendants James Eastwood, Randy Gilbertson, Jose Delgado, John Gillum, and Donald Harris. The added Defendants are officers and staff at SRCI.

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the Defendant's liability based on the alleged conduct. *Ashcroft v.*

---

[2] As discussed at oral argument, Defendants' motion to transfer venue is DENIED at this time.

*Iqbal,* 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendants argue that: (1) Plaintiff's claims against the supervisor Defendants fail to state a claim for relief and (2) the claims against the newly added Defendants are barred by the statute of limitations.

### I. Failure to State a Claim

Plaintiff alleges Defendants Williams, Morrow, Nooth, and Gilmore, in their respective supervisory roles at the DOC and SRCI "acted with deliberate indifference to the known and recognized constitutional and legal right of Hagen to be free from cruel and unusual punishment." Pl.'s First Am. Compl.13, ECF No. 19 (FAC). Defendants contend that Plaintiff did not sufficiently allege any direct, personal involvement of the supervisor Defendants in the alleged violations of Hagen's constitutional rights.

"Supervisors aren't vicariously liable for constitutional violations under section 1983. But they can be liable for their own conduct." *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014) (en banc). A supervisor may be culpable if he or she is personally involved in the

3 – OPINION AND ORDER

constitutional deprivation or if there is a causal connection between the supervisor's conduct and the constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08. This includes a supervisor's culpable action or inaction in training, supervising or controlling his subordinates. *Id.*

The Ninth Circuit's decision in *Starr* is illustrative because it also involved Eighth Amendment claims against a supervisor for injuries suffered by an inmate. In *Starr*, deputies opened a locked gate allowing inmates to attack Starr. *Id.* at 1204. The deputies ignored Starr's pleas for help and, after the other inmates stopped attacking him, several deputies began kicking and yelling at Starr as other deputies looked on. *Id.* Starr sued Sheriff Baca, the offsite supervisor, and the deputies involved in the attack. *Id.*

The court held that Starr's complaint successfully stated a claim against Sheriff Baca, because the factual allegations went beyond stating the bare elements of a deliberate indifference claim. *Id.* at 1216. The *Starr* complaint specifically detailed numerous incidents in which inmates were injured or killed and specifically alleged Sheriff Baca received notice of each incident. *Id.* The complaint also alleged that Sheriff Baca received several reports of the systematic problems in the county jails under his supervision that resulted in inmate injuries and deaths. *Id.* Specifically, when Sheriff Baca was a supervisor in 1997, he received a Department of Justice (DOJ) report detailing constitutional violations including abuse of inmates by sheriff's deputies. *Id.* at 1209. As Sheriff, Baca received weekly reports detailing jail deaths and injuries. *Id.* In 1999, Sheriff Baca signed a Memorandum of Understanding (MOU) under threat of

lawsuit requiring him to address constitutional violations of inmates. *Id.* In 2006, the DOJ issued another report finding continuing noncompliance with the MOU. *Id.* Seven inmates were killed between 2002 and 2005 and five of those deaths occurred within a six-month period. *Id.* at 1209-11. After all but one of these deaths, Sheriff Baca was notified of his deputies' violations for failing to provide reasonable security, lax discipline, and failure to supervise. *Id.* Sheriff Baca personally signed off on a civil settlement and was aware of another settlement, both involving severe inmate beatings. *Id.* at 1209- 10. In addition, the Sherriff Department's Special Counsel notified the Sherriff that his deputies' conduct was costing the county millions of dollars in civil judgments and settlements. *Id.* at 1211. In total, Special Counsel notified Sheriff Baca of 29 cases involving police misconduct that settled for $100,000 or more, only eight of which resulted in disciplinary actions or policy changes. *Id.* In 2005, Special Counsel also reported to Sheriff Baca that the largest LA County jail "is so outdated, understaffed and riddled with security flaws that it jeopardizes the lives of guards and inmates." *Id.*

The court held that the complaint's numerous allegations were sufficiently detailed and "plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr." *Id.* Even with these detailed allegations, Judge Trott dissented, finding that Starr did not state a causal connection between the Sherriff's *individual* actions and Starr's assault. *Id.* at 1217-22 It is clear that there is a high bar for what is considered a sufficient claim for supervisory liability under section1983.

Turning to the allegations in this case, Plaintiff has not met that bar. She has not alleged a sufficient causal connection between Defendants Williams, Morrow, Nooth, and Gilmore's acts or failures to act and Hagen's death.

## A. **Defendants Williams and Morrow**

Defendant Williams was the Director of the Oregon DOC until December 21, 2011. FAC

2. Defendant Morrow was the interim Director from January 2012 to February 2012. FAC 3. The

Director manages all Oregon State prisons, including SRCI and has a duty to protect all inmates

from violence. FAC 2. Plaintiff alleges that Defendants Williams and Morrow, as Directors,

"knew or should have known that the policies and procedures in place at DOC and SRCI failed

to provide sufficient protection to inmates," and they "knew or should have known that their

subordinates acted with deliberate indifference to inmates' constitutional right to be free from

violence." FAC 12.

Here, Plaintiff fails to allege facts with sufficient detail to infer that Williams and

Morrow plausibly were aware of the unconstitutional conduct of DOC personnel and were

deliberately indifferent to the safety of Hagen. Plaintiff instead relies on the bare assertion that

Williams and Morrow would have been aware of "an ongoing problem of inmate violence

throughout the DOC and, specifically . . . the murder of an inmate at SRCI by an inmate with

whom he had a known conflict." Resp. 12 (citing FAC, ¶¶ 18, 42, 43).

The fact that an inmate was killed in a prison setting prior to Hagen's murder, without

more, does not provide the type of notice outlined in *Starr*. And while a homicide in a prison can

never be tolerated by prison officials, there is nothing in this record to indicate any similarity or

pattern between the prior homicide and Hagen's death that would give rise to deliberate

indifference. The claims against Williams and Morrow are dismissed, without prejudice.

## B. **Defendants Nooth and Gilmore**

Plaintiff alleges that Defendants Nooth and Gilmore, as onsite SRCI superintendents,

knew or should have known that SRCI's policies and procedures failed to ensure inmate safety.

While this is perhaps a stronger claim because Defendants Nooth and Gilmore work onsite at SRCI, Plaintiff again fails to establish a sufficient causal connection. As with Defendants Williams and Morrow, Plaintiff's allegations do not demonstrate Defendants Nooth or Gilmore knew of, or acquiesced in, the unconstitutional conduct by their subordinates. Plaintiff states that Defendant Nooth "received regular reports from management staff and had direct knowledge of the manner in which SRCI treated its inmates" and Defendant Gilmore "was responsible for all aspects of security operations, including oversight of staffing, training, and maintaining the safety of staff and inmates." FAC 4. As noted above, the allegations fail to demonstrate Defendant Nooth and Gilmore's knowledge, acquiescence, or deliberate indifference to the events or policies leading to Hagen's death. Instead, the allegations appear to rely on a theory of vicarious liability, unavailable for section 1983 claims alleging supervisory liability. Thus, Plaintiff's claims against Defendants Williams, Morrow, Nooth, and Gilmore are dismissed, without prejudice.

## II. Statute of Limitations

Defendants argue that Plaintiff's claims against Eastwood, Gilbertson, Delgado, Gillum, and Harris are barred by the statute of limitations. The statute of limitations for actions brought under 42 U.S.C. § 1983 is determined by state law. *Strung v. Anderson*, 452 F.2d 632 (9th Cir. 1971). Oregon's two-year statute of limitations for personal injury actions applies to claims brought under 42 U.S.C. § 1983. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir.2002). While state law determines the period of limitations, federal law determines when a cause of action accrues. *Briley v. California*, 564 F.2d 849, 855 (9th Cir. 1977). A cause of action accrues under federal law at the time of the injury. *Wallace v. Kato*, 549 U.S. 384, 388–90 (2007).

The cause of action accrues in this case no later than the day Hagen died, February 3,

2012. Plaintiff filed this case on January 30, 2014, within the two-year statute of limitations,

against Defendants Williams, Morrow, Nooth, Gilmore, and 10 John Doe DOC employees who

worked at SRCI. On May 22, 2014, Plaintiff filed an amended complaint adding Defendants

Eastwood, Gilbertson, Delgado, Gillum, and Harris. Defendants argue that the claims against the

additional Defendants are time barred. At issue is whether: 1) equitable tolling tolls the statute of

limitations; or 2) the amended complaint relates back to the original complaint and therefore is

timely under the statute of limitations.

Because equitable tolling is not available in Oregon under the circumstances present here,

and because the claims against the newly added Defendants do not relate back to the claims in

the original complaint, the claims against Defendants Eastwood, Gilbertson, Delgado, Gillum,

and Harris are barred by the two-year statute of limitations.

## A.  Equitable Tolling

Actions brought under section 1983 follow the forum state's tolling rules. *Fink v. Shedler*,

192 F.3d 911, 914 (9th Cir. 1999). In Oregon, there is little precedent allowing for equitable

tolling. *See Womack v. McTeague*, No. 2:10-CV-332-SU, 2012 WL 3011006, at *8 (D. Or. June

11, 2012) (noting the absence of Oregon law on equitable tolling); *D.H.M. v. Or. Youth*

*Authority*, No. CIV. 06-143-KI, 2008 WL 1766727, at *5 (D. Or. Apr. 8, 2008) (finding no

precedent showing equitable tolling to apply to § 1983 claims). Even those Oregon District

Courts that have discussed the possibility of equitable tolling have never actually applied it. *See*

*Allen v. NW. Permanente, P.C.*, No. 3:12-CV-0402-ST2013, 2013  WL 865967, at *6 (D. Or.

Jan. 2, 2013) (finding that equitable tolling is available when circumstances are outside the

8 – OPINION AND ORDER

control of the affected parties, but holding that plaintiff's obligation to participate in arbitration did not support claim for equitable tolling).

I agree that equitable tolling is not clearly established in Oregon. Even if equitable tolling is potentially available, Plaintiff's claims would still fail because it was not impossible for her to comply with the statute of limitations in this instance. Plaintiff could easily have filed earlier in order to start the discovery process, learn the identities of the John Doe officers, and amend her complaint within the statute of limitations. Instead, before filing any complaint, Plaintiff sent informal requests for information to The Oregon DOC, the DOC's counsel, and the Office of the District Attorney handling the case. Decl. of Dennis Steinman 2. Apparently, citing an ongoing investigation, the state agencies refused to provide informal discovery to Plaintiff. Plaintiff neglected to file any formal proceedings, such as a FOIA claim, a public records request, or a complaint. Instead, Plaintiff filed the complaint naming the John Doe Defendants on the eve of the running of the statute of limitations.

After filing the complaint, Plaintiff declined to waive initial disclosures. It was through the disclosures that Plaintiff discovered the identities of the individual officers and staff at SRCI who were involved in the events surrounding Hagen's death. That Plaintiff waited to file the complaint does not mean it was "impossible to comply with the statute of limitations." Instead, Plaintiff simply chose other avenues to obtain the necessary information. Unfortunately for Plaintiff, by the time she received the names of the individual officers during formal discovery, the two-year statute of limitations had run.

Plaintiff also argues that the statute of limitations should be tolled for the time in between Hagen's death and her appointment as personal representative. Plaintiff bases this argument on ORS 12.160 that provides tolling for minors and the insane. Plaintiff argues that "insane" has

9 – OPINION AND ORDER

been interpreted to apply to mentally disabled people unable to comprehend their legal rights.

Pl.'s Resp. 20, ECF 37, quoting: *Fullmer v. Samaritan Health Servs., Inc.,* No. 6:11-CV-06143-

TC, 2012 WL 6962277, at *1 (D. Or. Dec. 10, 2012) *report and recommendation adopted,* No.

6:11-CV-06143-TC, 2013 WL 357790 (D. Or. Jan. 23, 2013). Equating a dead person with a

person unable to comprehend his legal rights goes too far. A dead person is not insane and ORS

12.160 does not apply to dead people.

## B. Relation Back

When "the limitations period derives from state law, [FRCP] 15(c)(1) requires us to consider

both federal and state law and employ whichever affords the 'more permissive' relation back

standard." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014)

(citation omitted). In this case, neither the Oregon Rule nor the Federal Rule allow relation back.

### (i)    Relation Back Under Federal Rule 15(c)

Federal rule 15(c) governs relation back. In order to relate back:

> (1) the basic claim must have arisen out of the conduct set forth in the
> original pleading; (2) the party to be brought in must have received such
> notice that it will not be prejudiced in maintaining its defense; (3) that
> party must or should have known that, but for a mistake concerning
> identity, the action would have been brought against it; and (4) the second
> and third requirements must have been fulfilled within the prescribed
> limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). The limitation period in this case is 120 days from

the filing of the original complaint as prescribed in FRCP 4(m). *Butler*, 766 F.3d at 1202. In this

case, Plaintiff meets the first two requirements, the underlying conduct is the same and the new

parties received notice within 120 days of the filing of the original complaint. At issue is whether

naming a John Doe Defendant in the original complaint is a "mistake" under FRCP 15.

The "mistake" clause looks to see whether the party to be brought in "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FRCP15(c)(1)(C)(ii). Most courts have held that substituting a John Doe Defendant with a named Defendant is not correcting a "mistake" and therefore does not relate back to the original complaint. *See Garrett v. Fleming*, 362 F.3d 692, 696-97 (10th Cir. 2004); *Wayne v. Jarvis*, 197 F.3d 1098, 1102-04 (11th Cir. 1999), *cert. denied*, 529 U.S. 1115 (2000); *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996.), *cert. denied*, 519 U.S. 821 (1996); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996); *Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993).

In 2010, the Supreme Court looked at the "mistake" clause, but did not address the "John Doe" issue. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). The Court held that the proper inquiry "under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the Plaintiff's intent in filing the original complaint against the first defendant." *Id.* at 553-54. Since *Krupski*, most courts have continued to not allow relation back for John Doe substitutions. *See Vance v. Rumsfeld*, 701 F.3d 193, 211 (7th Cir. 2012)(relied on pre-*Krupski* cases); and *Smith v. City of Akron*, 476 Fed. Appx 67 (6th Dist. 2012)(*Krupski* still requires there be a "mistake" and simply not knowing who to sue is not a mistake).

Plaintiff chose to bring claims in the original complaint against John Doe Defendants. I agree with the majority of other courts that intentionally naming a "John Doe" Defendant is not a "mistake" as to the Defendant's identity. Therefore, the new claims do not relate back to the original claims under FRCP 15.

#### (ii)   **Relation Back under Oregon Rule 23**

The Oregon rule governing relation back is ORCP 23. ORCP 23(C) provides that:

> Whenever the claim or defense asserted in the amended pleading arose out
> of the conduct, transaction, or occurrence set forth or attempted to be set
> forth in the original pleading, the amendment relates back to the date of
> the original pleading. An amendment changing the party against whom a
> claim is asserted relates back if the foregoing provision is satisfied and,
> within the period provided by law for commencing the action against the
> party to be brought in by amendment, such party (1) has received such
> notice of the institution of the action that the party will not be prejudiced
> in maintaining any defense on the merits, and (2) knew or should have
> known that, but for a mistake concerning the identity of the proper party,
> the action would have been brought against the party brought in by
> amendment.

Oregon Courts have divided ORCP 23(C) cases into "misnomer" and "misidentification"

cases. *Worthington v. Estate of Davis*, 250 Or. App. 755, 760 (2012). Misnomer cases are those

in which Plaintiff made "a mistake in naming that person or entity, that is, an error in stating

what the Defendant is *called.*" *Id.* at 760; *see also Harmon v. Fred Meyer*, 146 Or. App. 295, 298

(1997) (Court found that when Plaintiff initially filed against "Interlake, Inc." instead of "The

Interlake Companies, Inc.", it was a misnomer case."). A misnomer case triggers the first line of

ORCP 23 (C), meaning a Plaintiff need only demonstrate the amended claim or defense arose

from the same conduct, transaction, or occurrence as the original pleading. *Id.* at 759.

A misidentification case is one in which the Plaintiff made "a mistake in choosing *which*

person or entity to sue." *Worthington*, 250 Or. App. at 760. A misidentification case requires a

change in party, thus triggering the second sentence of ORCP 23(C) and the subsequent

requirements similar to those found in the federal rule, FRCP 15. In *Worthington*, plaintiff

initially filed an automobile accident claim against a deceased defendant. After the statute of

limitations had run, plaintiff amended the complaint, naming the deceased's estate and personal

representative. The Court held this to be a "misidentification" case because "[p]laintiff did not

err in stating the name of the defendant whom she intended to sue; rather, she chose the wrong person to sue." *Id.* at 763; *see also Hamilton v. Moon*, 130 Or. App. 403, 405 (1993) (Plaintiff filed an action against Kwon Moon following an auto accident; however the actual defendant was Joon Moon, Kwon Moon's father).

Oregon courts have not addressed whether a "John Doe" case is a misnomer or misidentification. One prior District of Oregon case held that naming a John Doe Defendant "was not a change in parties and thus did not trigger the strictures of Rule 23." *Korbe v. Hilton Hotels Corp.* No. CIV. 08-1309-PK, 2009 WL 723348, at *2 (D. Or. Mar. 13, 2009). However, I disagree and find that Plaintiff's amended complaint did change parties. As noted above, Plaintiff did not mistakenly call the Defendants John Does, she intentionally chose to name John Doe Defendants. Therefore, this is a change in parties and a misidentification case. Because this is a misidentification case, the additional Defendants must have: 1) received adequate notice; and 2) known that but for a mistake, they were the intended Defendants of this case.

In this case, because Plaintiff did not make a mistake, I will not address the issue of notice. "The wording of ORCP 23 concerning mistake is the same as in Rule 15(c) discussed above. Relation back is allowed if 'the plaintiff misnamed but correctly identified the intended defendant.'" *D.H.M. v. Or. Youth Auth.*, No. CIV. 06-143-KI, 2008 WL 1766727, at *7 (D. Or. Apr. 8, 2008)(quoting *Krauel v. Bykers Corp.,* 173 Or. App. 336, 340, 21 P.3d 1124 (2001)). In *Clavette v. Sweeney*, the court found that "[a] plaintiff's lack of knowledge regarding a defendant's identity is not a 'mistake' for purposes of Or. R. Civ. P. 23, subd. C." 132 F. Supp. 2d 864, 876 (D. Or. 2001). I agree. The analysis under ORCP 23 is similar to that under FRCP 15. A Plaintiff's lack of knowledge as to a Defendant's identity is not a mistake. A mistake is, for example, when a Plaintiff misnames Defendant Sarah Smith as Sara Smith.

13 – OPINION AND ORDER

In this case, Plaintiff made an intentional decision based on her lack of knowledge.

Therefore, the claims against Defendants Eastwood, Gilbertson, Delgado, Gillum, and Harris do

not relate back to the original claims against the John Doe Defendants. As Plaintiff brought the

claims against Defendants Eastwood, Gilbertson, Delgado, Gillum, and Harris after the running

of the two-year statute of limitations, those claims are untimely and are dismissed, with

prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, ECF No. 29, is GRANTED.

The claims against the supervisor defendants are dismissed without prejudice. Plaintiff is granted

14 days to file an amended complaint. The claims against the newly added individual defendants

are dismissed with prejudice.

At this time, I decline to exercise supplemental jurisdiction over plaintiff's state-law tort

claim of aiding and abetting. *See* 28 U.S.C.A. § 1387 ("The district courts *may* decline to

exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims

over which it has original jurisdiction" (emphasis added)).

IT IS SO ORDERED.

DATED this 4th day of December 2014.

/s/ Michael J. Mcshane
Michael J. McShane
United States District Judge