**DENNIS STEINMAN,** OSB No. 954250
dsteinman@kelrun.com
**TED E. RUNSTEIN,** OSB No. 661052
trunstein@kelrun.com
**SCOTT J. ALDWORTH,** OSB No. 113123
saldworth@kelrun.com
**ZACHARY B. WALKER,** OSB No. 115461
zwalker@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 S.W. Yamhill, Suite 600
Portland, OR  97204
Telephone: 503/222-3531
Fax: 503/227-2980
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| TIFFANY HAGEN, as Personal Representative for the ESTATE OF MICHAEL CLARENCE HAGEN,<br><br>                **Plaintiff,**<br><br>            v.<br><br>**MAX WILLIAMS, individually; MITCH MORROW, individually; MARK NOOTH, individually; and JUDY GILMORE, individually,**<br><br>                **Defendants.** | Case No. 6:14-cv-165-MC<br><br>**SECOND AMENDED COMPLAINT**<br><br>42 U.S.C. § 1983 (U.S. Constitution; Eighth Amendment)<br><br>**DEMAND FOR JURY TRIAL** |

For its Complaint against Defendants, Plaintiff alleges as follows:

### I.    JURISDICTION AND VENUE

1. This is an action for damages for violations of 42 U.S.C. § 1983 for violation of

**Second Amended Complaint**                                                                                           **Page 1**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

an inmate's right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(1), (3) and (4).

2. Defendants' acts occurred in the District of Oregon, and, at all material times, the parties resided or did business in the State of Oregon.

## II.    PARTIES

3. Plaintiff Tiffany Hagen ("Plaintiff") is the duly appointed Personal Representative of the Estate of Michael Clarence Hagen ("Mr. Hagen"), pursuant to an Order entered in Multnomah County Circuit Court, State of Oregon, dated June 13, 2012. Plaintiff is Mr. Hagen's widow. Mr. Hagen died on February 3, 2012, at Saint Alphonsus Regional Medical Center in Boise, Idaho.

4. At all times mentioned herein up to December 31, 2011, Defendant Max Williams ("Defendant Williams") was the Director of the Oregon Department of Corrections ("DOC"). DOC was and is a state agency charged with managing the prisons of the State of Oregon, including Snake River Correctional Institution ("SRCI"). DOC is responsible for creating, enacting, and enforcing policies and procedures related to all aspects of Oregon prisons, including those related to inmate safety and the protection of inmates' constitutional right to be free from violence at the hands of other inmates. DOC has written this constitutional duty into its Code of Ethics, requiring employees to accept their duty "to protect Department of Corrections incarcerated persons against deception, oppression or intimidation, violence or disorder."

5. As director of DOC, Defendant Williams was directly responsible for ensuring that DOC institutions were operated in compliance with federal law and state law, and for the development of department policy and administrative oversight of DOC institutions, including policy at SRCI. Defendant Williams was directly involved in the oversight of SRCI, met

**Second Amended Complaint**                                                                                                      **Page 2**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

frequently with prison superintendents, and had the authority to discipline and/or fire anyone in a management position within DOC and SRCI.  At all times mentioned herein, DOC was located in Marion County, Oregon, and, on information and belief, Defendant Williams was a resident of Marion County, Oregon.

6. At all times from January 1, 2012 to February 2012, Defendant Mitch Morrow ("Defendant Morrow") was the interim Director of DOC.  As Director of DOC, Defendant Morrow was directly responsible for ensuring that DOC institutions were operated in compliance with federal law and state law, and for the development of department policy and administrative oversight of DOC institutions, including policy at SRCI.  Defendant Morrow was directly involved in the oversight of SRCI, met frequently with prison superintendents, and had the authority to discipline and/or fire anyone in a management position within DOC and SRCI.  On information and belief, Defendant Morrow was a resident of Marion County, Oregon, at all times mentioned herein.

7. At all times mentioned herein, Defendant Mark Nooth ("Defendant Nooth") was the Superintendent of SRCI.  In his intendent of SRCI.  In his position as Superintendent of SRCI, Defendant Nooth was responsible for overseeing the treatment of inmates at SRCI and supervising employees of SRCI.  He was also responsible for developing, implementing, and enforcing prison policies and procedures, and had the authority to hire, discipline, and fire any SRCI employee.  He received regular reports from management staff and had direct knowledge of the manner in which SRCI treated its inmates.

/ / /

/ / /

/ / /

/ / /

**Second Amended Complaint**                                                                                                                    **Page 3**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

8. At all times mentioned herein, Defendant Judy Gilmore ("Defendant Gilmore") was the Assistant Superintendent of Security of SRCI. In her position as Assistant Superintendent of Security of SRCI, Defendant Gilmore was responsible for all aspects of security operations, including oversight of staffing, training, and maintaining the safety of staff and inmates.

### III.     ALLEGATIONS

9. On June 28, 2010, Mr. Hagen was sentenced to prison and transferred to Coffee Creek Correctional Facility in Clackamas County, Oregon, for intake. On or about the first week of July 2010, Mr. Hagen was then transferred to SRCI. Mr. Hagen had never been to prison before and did not have any prior experience with the criminal justice system.

10. At SRCI, Mr. Hagen attempted to stay out of trouble, avoid conflict as much as possible, and refused to fight, even when provoked. However, other inmates took advantage of Mr. Hagen because of his refusal to fight. Inmate-on-inmate violence is prevalent at SRCI and, at all material times, Defendants were aware of this violence.

11. In early 2011, Mr. Hagen ran into trouble with inmates who were members of white supremacist prison gangs, specifically with three inmates named Terry Lapich ("Lapich"), Michael Miskell ("Miskell"), and Cheyenne Evans ("Evans"). In April 2011, Lapich and Miskell attempted to extort Mr. Hagen. After prison officials noticed marks on Mr. Hagen's face, Intelligence Officer Michael Foley asked him what had happened. Officer Foley was responsible for investigating conflicts amongst inmates and reporting conflicts between inmates and threats made against inmates to SRCI security personnel. Mr. Hagen reported that, after finding out that he was a good artist, Lapich and Miskell had asked him to do tattoo work on them. Mr. Hagen refused because he did not want to get in trouble or lose his job as a tutor. Lapich and Miskell told him that, if he did not comply, he would be assaulted. Two days later, Mr. Hagen was attacked by two other inmates at the direction of Lapich and Miskell. Lapich and

**Second Amended Complaint**                                                                                                                        **Page 4**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Miskell were both disciplined as a result of this incident. From this point forward, Mr. Hagen was labeled a snitch by the white supremacist gang members.

12. In May 2011, Mr. Hagen was assigned a new cellmate, James DeFrank. Shortly after moving in with Mr. Hagen, Mr. DeFrank attacked and killed another inmate, Chris Lange, on May 21, 2011. On information and belief, the DOC knew of a pre-existing conflict between Mr. DeFrank and Mr. Lange, but failed to ensure that the inmates were kept separated.

13. On information and belief, the DOC conducted an investigation into the circumstances surrounding the murder and the findings were reported to Defendant Williams. On information and belief, the investigation revealed deficiencies in the DOC's policies and procedures for protecting inmates from other inmates with whom they had known conflicts, including the fact that DOC policy did not require the immediate transfer of inmates whose life had been threatened by other inmates. On information and belief, the investigation also revealed that DOC employees had known about the conflict between Mr. Lange and Mr. DeFrank, had failed to protect Mr. Lange from Mr. DeFrank, and had been deliberately indifferent to the constitutional rights of Mr. Lange. On information and belief, Defendant Williams ignored the findings of the investigation, did not take any steps to change the DOC's deficient policies and procedures related to inmate conflicts, and did not take any disciplinary action against those DOC employees who had allowed Mr. Lange's murder to occur.

14. On information and belief, the findings of the investigation were also reported to Defendant Nooth. On information and belief, the investigation revealed systemic deficiencies at SRCI related to its practices for protecting inmates from other inmates with whom they had known conflicts, including the fact that SRCI's practices did not require the immediate transfer of inmates whose life had been threatened by other inmates. On information and belief, the investigation also revealed that employees at SRCI had known about the conflict between Mr. Lange and Mr. DeFrank, had failed to protect Mr. Lange from Mr. DeFrank, and had been

**Second Amended Complaint**                                                                                      **Page 5**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

deliberately indifferent to the constitutional rights of Mr. Lange. On information and belief, Defendant Nooth ignored the findings of the investigation, did not take any steps to change SRCI's deficient practices related to inmate conflicts, and did not take any disciplinary action against those SRCI employees who had allowed Mr. Lange's murder to occur.

15. On information and belief, the findings of the investigation were also reported to Defendant Gilmore. On information and belief, the investigation revealed failings within SRCI's Security Unit in protecting inmates from other inmates with whom they had known conflicts, including the repeated failure of security officers to adequately keep inmates with conflicts separated. On information and belief, the investigation also revealed that employees in SRCI's Security Unit had known about the conflict between Mr. Lange and Mr. DeFrank, had failed to protect Mr. Lange from Mr. DeFrank, and had been deliberately indifferent to the constitutional rights of Mr. Lange. On information and belief, Defendant Gilmore ignored the findings of the investigation, did not take any steps to address the failings in SRCI's Security Unit related to inmate conflicts, and did not take any disciplinary action against those employees in SRCI's Security Unit who had allowed Mr. Lange's murder to occur.

16. Following Mr. Lange's murder, Mr. Hagen was placed in administrative segregation for the next two days while the prison conducted its investigation. Afterwards, he was moved to a new unit and placed with a new cellmate. Mr. Hagen initially got along fine with his new cellmate, but, after eating lunch separately and then returning to their cell, Mr. Hagen was told by his new cellmate that he had heard bad things about Mr. Hagen and that Mr. Hagen had to "get out of his cell." The cellmate then punched Mr. Hagen. Mr. Hagen did not react and the cellmate walked away.

17. Mr. Hagen did not want to fight the new cellmate but also did not know how he could move out of the cell. Mr. Hagen, who suffered from Grave's disease and hyper-thyroidism, had recently had pain in his prostate and decided to go to the medical unit to get out

**Second Amended Complaint**             **Page 6**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

of the situation. After an examination, Mr. Hagen was given medication and told to return to his cell. Mr. Hagen told the corrections officers that he did not want to go back to his cell because it would lead to a fight with his cellmate. The corrections officers told Mr. Hagen that he would receive a disciplinary report for refusing orders and he was placed in DSU, or "the hole." Mr. Hagen was upset that his record of clear conduct was ruined but was relieved that he would not have to face a fight with his cellmate.

18. At his disciplinary hearing, Mr. Hagen explained to the hearings officer that he had not returned to his cell because he had been told that he would be beaten up if he did. Nonetheless, the hearings officer found Mr. Hagen guilty and he was punished with eight days in the hole and an additional week of lost privileges.

19. Even while in the hole, Mr. Hagen heard that Lapich, Miskell, and Evans had been talking about him and spreading rumors, specifically saying that he had "PC'd up," meaning that he had sought protective custody by giving information about other inmates to the corrections officers. Mr. Hagen wrote kytes to his counselor and his BHS counselor explaining the situation, asking for help, and requesting a transfer to avoid the prospect of violent attacks on him at SRCI.

20. After he was released from the hole, Mr. Hagen was placed in a new cell. However, on or about June 21, 2011, Mr. Hagen was approached and threatened by eight members of the white supremacist prison gangs. They told Mr. Hagen that he had to leave the unit by lunch time the next day or they would "take him out." Mr. Hagen spoke to a lieutenant about the situation and was moved to a different complex in SRCI the next day.

21. The transfer of Mr. Hagen to a different complex was insufficient to protect Mr. Hagen, however, because he had been targeted throughout SRCI. On or about October 6, 2011, despite Mr. Hagen's existing conflict with the white supremacist gangs, the DOC moved Evans into Mr. Hagen's cell. On information and belief, DOC personnel placed Evans in a cell

**Second Amended Complaint**                                                                                           **Page 7**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

with Mr. Hagen with full knowledge of Mr. Hagen's prior conflict with Miskell and Lapich, as well as knowledge of Evans's gang affiliation with Miskell and Lapich. Evans's first words to Mr. Hagen were, "We are going to have a problem." Mr. Hagen did not want any trouble and told Evans that he was trying to move to a different cell.

22. Later that day, Mr. Hagen instigated a fight with Evans in the dayroom. Mr. Hagen charged at Evans, but Evans threw him to the ground and punched Mr. Hagen and stomped on him with his boots. Mr. Hagen was badly hurt and had to be taken to an outside hospital.

23. During a hearing on the incident, Mr. Hagen explained that he believed that the only way in which he could stop the harassment and threats that he had experienced from the white supremacist gangs was to fight one of their members. Mr. Hagen stated that he had not even intended to hurt Evans, but just hoped to gain the respect that comes in prison after fighting another inmate. Mr. Hagen was ordered to spend 120 days in the hole as a result of the incident. Mr. Hagen did not like being confined to the hole, but, again, was relieved to feel safe from the other inmates.

24. During the period that he was in the hole, Mr. Hagen met with his counselor, Jose Delgado, and asked to be moved to a different prison for his safety.

25. While in the hole, Mr. Hagen also learned that Evans had told everyone in the white supremacist gangs that he wanted Mr. Hagen "taken out" if anyone saw him. Mr. Hagen again spoke with Officer Foley about his fear of being assaulted or even killed. Officer Foley investigated Mr. Hagen's statements and, on October 27, 2011, informed several DOC officials that he had confirmed with several sources that Mr. Hagen's life would be in danger if he were released into the general population at SRCI.

26. On November 27, 2011, Mr. Hagen sent a kyte to Captain James Eastwood and Lieutenant Randy Gilbertson, officers in SRCI's Security Unit, informing them that he had heard

**Second Amended Complaint**                                                                                                    **Page 8**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

that Evans had put a hit on his head and that he was afraid that he would be killed if he was released from DSU back into the general prison population. The kyte stated that Mr. Hagen was especially afraid because his former cellmate, James DeFrank, had killed another inmate whom Mr. DeFrank was supposed to be separated from.

27. On December 9, 2011, Officer Foley informed a DOC employee in SRCI's Special Housing office, Tina Campbell, that he had received multiple kytes from Mr. Hagen in which he had expressed a fear for his life. Officer Foley also stated that he had interviewed Mr. Hagen with Lieutenant Gilbertson that day and that he told Mr. Hagen he needed to submit formal conflict forms related to the inmates who had threatened him. Finally, Officer Foley told Ms. Campbell that he and Lieutenant Gilbertson agreed that Mr. Hagen would need to be transferred to another prison once he had completed his conflicts. Mr. Hagen was informed of this.

28. After speaking with Officer Foley and Lieutenant Gilbertson, Mr. Hagen excitedly wrote to his wife to share the news that he was being moved. He also followed Officer Foley's instructions and submitted three Inmate Conflict Reports covering Lapich, Miskell, and Evans. Each of the reports stated that Mr. Hagen was afraid for his life and that Lapich, Miskell, and Evans were planning to kill him or have him killed.

29. Each of these reports was approved by Lieutenant Gilbertson on December 23, 2011, and forwarded to Captain Eastwood for final approval. On January 6, 2012, however, Captain Eastwood denied approval of each of the conflicts. In response to this denial, on January 26, 2012, Officer Foley provided Captain Eastwood with additional information about Mr. Hagen's conflict with the other inmates and told Captain Eastwood that Mr. Hagen would be killed if he were released back into SRCI's general population.

30. In response to Officer Foley's statements, Captain Eastwood reversed his initial denial and approved an "institution level conflict," meaning that Mr. Hagen could not safely

**Second Amended Complaint**                                                                                             **Page 9**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

remain in the same institution with Lapich, Miskell, or Evans, and would need to be transferred to another institution. Ms. Campbell entered the conflicts into the SRCI system and, on January 27, 2012, sent an email informing a number of DOC personnel that the institution level conflicts had been entered. The DOC personnel who were specifically notified included Officer Foley, Mr. Delgado, Lieutenant Gilbertson, and Officer John Gillum, the SRCI employee responsible for making inmate cell assignments and ensuring that inmates were not placed in a cell with inmates with whom they had a reported conflict.

31. After the conflicts were approved, Officer Foley called DSU and told the DOC personnel stationed there that Mr. Hagen was going to be transferred to another prison and, under no circumstances, was Mr. Hagen to be returned to SRCI's general prison population.

32. On information and belief, DOC personnel allowed Lapich, Miskell, and Evans to learn that Mr. Hagen had reported their conspiracy to murder him, submitted the conflict forms, and requested a transfer.

33. Over the following week, no one at SRCI took any steps to transfer Mr. Hagen to another institution. The DOC did not take any further action to protect Mr. Hagen when he was removed from DSU on February 2, 2012; rather, it put Mr. Hagen directly in harm's way. DSU personnel had been told not to release Mr. Hagen to the general prison population, but ignored that directive. In spite of the documented institutional level conflict requiring Mr. Hagen to be transferred to another prison, and in spite of the fact that Officer Gillum had explicitly been informed of the existence of Mr. Hagen's conflict with Lapich, Miskell, Evans, and their gangs, Officer Gillum intentionally returned Mr. Hagen to the general prison population at SRCI. Further, Officer Gillum assigned Mr. Hagen to share a cell with none other than inmate Lapich, one of the people who had threatened his life. Alternatively, Officer Gillum, who was the only employee at SRCI responsible for assigning cells to inmates being released from DSU, allowed

Second Amended Complaint                                                                                          Page 10

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

another DOC employee, Chris Vancleave, to access the computer system and assign Mr. Hagen to share a cell with Lapich.

   34. Mr. Hagen arrived on his new cell block at 8:25 a.m. and checked in with Correctional Officer Donald Harris, the officer assigned to Mr. Hagen's new unit. Immediately after Mr. Hagen learned that his assigned cellmate was Lapich, he spoke with Officer Harris and told him that he could not cell in with Lapich because they had a pre-existing conflict. However, Officer Harris ordered Mr. Hagen to go to his new cell. Shortly after Mr. Hagen entered the cell, audible screams came from inside the cell. On information and belief, Officer Harris heard the screams coming from the cell, ignored the screams, and did not take any action to respond.

   35. Less than two hours after Mr. Hagen's arrival, at 10:05 a.m., Lapich rang the emergency bell in his cell and reported to Officer Harris that Mr. Hagen had fallen off of his bed. Officer Harris found Mr. Hagen on the floor of the cell in a pool of blood and called for a medical response. Lapich had severely beaten Mr. Hagen and stomped on his head, breaking Mr. Hagen's nose, fracturing his orbits, and causing significant bleeding and swelling in Mr. Hagen's brain. Boot marks were visible on Mr. Hagen's head. Mr. Hagen was airlifted to Saint Alphonsus Regional Medical Center in Boise, Idaho, and was pronounced dead the next day, February 3, 2012. The autopsy determined that he had died from blunt force head injuries. The District Attorney has indicted Terry Lapich for the murder of Michael Hagen.

   36. On May 17, 2012, Plaintiff timely filed a Tort Claim Notice.

   37. On or about June 28, 2013, another inmate at SRCI, Jason Gould, was murdered by his cellmate. On or about August 17, 2013, an inmate at Oregon State Penitentiary in Marion County, Joseph Akins, was murdered by his cellmate. Additionally, within a ten-day span in late January and early February 2014, two inmates at Two Rivers Correctional Institution in Umatilla County died under suspicious circumstances. On December 11, 2014, another inmate at SRCI, Terry Goodman, was murdered by other inmates. In the past three years, at least seven inmates

**Second Amended Complaint**                                **Page 11**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

at DOC's prisons, including four inmates at SRCI, have been murdered or died under suspicious circumstances.

38.     On information and belief, the DOC did not conduct an investigation into how Mr. Hagen was placed in a cell with an inmate with whom he had an approved institution level conflict, why Mr. Hagen was not transferred, or whether any DOC employee acted in concert with Lapich, Miskell, or Evans in placing Mr. Hagen in a cell with Lapich. The DOC has not disciplined any DOC employee for the events that led to Mr. Hagen's murder.

39.     On information and belief, when Defendant Morrow took over as Director of the DOC on January 1, 2012, he was briefed on the known deficiencies in the DOC's policies, including the fact that DOC policy did not require the immediate transfer of inmates whose life had been threatened by other inmates, as well as the failure of existing DOC policy to adequately protect inmates from other inmates with whom they had a known conflict and the participation of certain DOC employees in the deprivation of inmates' constitutional rights. On information and belief, Defendant Morrow did not take any steps to address these problems prior to Mr. Hagen's murder.

40.     There exists a pattern and practice of a failure by Defendants Williams and Morrow to revise the DOC's policies and procedures to protect inmates from violence in its prisons. Such pattern and practice contributed to the deaths of Mr. Hagen, Chris Lange, Jason Gould, Joseph Akins, and Terry Goodman.

41.     On information and belief, Defendants Williams, Morrow, Nooth, and Gilmore knew or should have known that the policies and procedures in place at DOC and SRCI failed to provide sufficient protection to inmates and contributed to inmate-on-inmate violence, but did not take any steps to change the relevant policies and procedures related to conflicts between inmates. Further, on information and belief, Defendants Williams, Morrow, Nooth, and Gilmore knew or should have known that their subordinates acted with deliberate indifference to inmates'

**Second Amended Complaint**                                                                                          **Page 12**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

constitutional right to be free from violence at the hands of other inmates, but did not take any steps to discipline those subordinates or remove them from their positions.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT WILLIAMS

### (42 U.S.C. § 1983)

42.  Plaintiff realleges paragraphs 1 through 41 as though fully set forth herein.

43.  Mr. Hagen had a right under the Constitution of the United States to be free from cruel and unusual punishment.

44.  At all times relevant to the liability allegations of this Complaint up until December 31, 2012, Defendant Williams was acting under the color of law—under the constitutions, statutes, administrative rules, customs, policies, and usages of the State of Oregon and the United States—and had assumed the responsibilities, activities, and rights involved in exercising his role as Director of DOC.

45.  While Mr. Hagen was under the supervision and care of DOC, Defendant Williams, in spite of notice of the inadequacy of existing DOC policies and procedures in protecting inmates who have known conflicts with other inmates and notice of DOC personnel's ongoing deliberate indifference to inmate-on-inmate violence at DOC institutions, acted with deliberate indifference to the known and recognized constitutional and legal right of Mr. Hagen to be free from cruel and unusual punishment by:

    a.  Failing to revise deficient policies and procedures to require the immediate transfer of inmates whose lives were threatened and to otherwise take necessary action to keep inmates safe from the foreseeable risk of harm at the hands of other inmates, such that Mr. Hagen was only one of seven inmates to be murdered by other inmates or die under suspicious circumstances within a three-year span, and, instead, leaving in place policies and procedures that Defendant Williams knew or should have known resulted in deprivations of inmates' constitutional rights; and

**Second Amended Complaint**                                                                                           **Page 13**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

      b.      Acting with deliberate or reckless indifference to the constitutional violations of his subordinates.

46.      The conduct of Defendant Williams, within his duties as Director of DOC and under color of state law, deprived Mr. Hagen of rights, privileges, and immunities secured by the United States Constitution. Specifically, Mr. Hagen was deprived of his constitutional right to be free from cruel and unusual punishment, under the Eighth Amendment of the United States Constitution.

47.      As a result of Defendant Williams's deprivation of Mr. Hagen's constitutional interests, Mr. Hagen suffered fear, anxiety, and emotional distress, as well as physical injuries that resulted in his death. Plaintiff is entitled to bring this claim pursuant to ORS 30.020(1). Plaintiff, on behalf of the beneficiaries of Mr. Hagen's estate, is entitled to damages for Mr. Hagen's injuries arising out of the deprivation of his constitutional rights in an amount to be determined at trial, but in no event less than $7.5 million.

48.      Plaintiff is also entitled to an award of punitive damages.

49.      Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT MORROW

(42 U.S.C. § 1983)

50.      Plaintiff realleges paragraphs 1 through 41 as though fully set forth herein.

51.      Mr. Hagen had a right under the Constitution of the United States to be free from cruel and unusual punishment.

52.      At all times relevant to the liability allegations of this Complaint from January 1, 2012 to February 2012, Defendant Morrow was acting under the color of law—under the constitutions, statutes, administrative rules, customs, policies, and usages of the State of Oregon and the United States—and had assumed the responsibilities, activities, and rights involved in exercising his role as Director of DOC.

**Second Amended Complaint**                                                                                              **Page 14**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

53. While Mr. Hagen was under the supervision and care of DOC, Defendant Morrow, in spite of notice of the inadequacy of existing DOC policies and procedures in protecting inmates who have known conflicts with other inmates and notice of DOC personnel's ongoing deliberate indifference to inmate-on-inmate violence at DOC institutions, acted with deliberate indifference to the known and recognized constitutional and legal right of Mr. Hagen to be free from cruel and unusual punishment by:

    a. Failing to revise deficient policies and procedures to require the immediate transfer of inmates whose lives were threatened and to otherwise take necessary action to keep inmates safe from the foreseeable risk of harm at the hands of other inmates, such that Mr. Hagen was only one of six inmates to be murdered by other inmates or die under suspicious circumstances within a three-year span, and, instead, leaving in place policies and procedures that Defendant Morrow knew or should have known resulted in deprivations of inmates' constitutional rights; and

    b. Acting with deliberate or reckless indifference to the constitutional violations of his subordinates.

54. The conduct of Defendant Morrow, within his duties as Director of DOC and under color of state law, deprived Mr. Hagen of rights, privileges, and immunities secured by the United States Constitution. Specifically, Mr. Hagen was deprived of his constitutional right to be free from cruel and unusual punishment, under the Eighth Amendment of the United States Constitution.

55. As a result of Defendant Morrow's deprivation of Mr. Hagen's constitutional interests, Mr. Hagen suffered fear, anxiety, and emotional distress, as well as physical injuries that resulted in his death. Plaintiff is entitled to bring this claim pursuant to ORS 30.020(1). Plaintiff, on behalf of the beneficiaries of Mr. Hagen's estate, is entitled to damages for

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Mr. Hagen's injuries arising out of the deprivation of his constitutional rights in an amount to be determined at trial, but in no event less than $7.5 million.

56. Plaintiff is also entitled to an award of punitive damages.

57. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT NOOTH

(42 U.S.C. § 1983)

58. Plaintiff realleges paragraphs 1 through 41 as though fully set forth herein.

59. Mr. Hagen had a right under the Constitution of the United States to be free from cruel and unusual punishment.

60. At all times relevant to the liability allegations of this Complaint, Defendant Nooth was acting under the color of law—under the constitutions, statutes, administrative rules, customs, policies, and usages of the State of Oregon and the United States—and had assumed the responsibilities, activities, and rights involved in exercising his role as Superintendent of SRCI for DOC.

61. While Mr. Hagen was under the supervision and care of DOC, Defendant Nooth, in spite of notice of the inadequacy of existing SRCI policies and procedures in protecting inmates who have known conflicts with other inmates and notice of SRCI personnel's ongoing deliberate indifference to inmate-on-inmate violence at SRCI, acted with deliberate indifference to the known and recognized constitutional and legal right of Mr. Hagen to be free from cruel and unusual punishment by:

    a. Failing to revise deficient policies and procedures to require the immediate transfer of inmates whose lives were threatened and to otherwise take necessary action to keep inmates safe from the foreseeable risk of harm at the hands of other inmates, such that Mr. Hagen was only one of four inmates murdered by other inmates at SRCI in less than three years,

Second Amended Complaint                                                                                                          Page 16

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

and, instead, leaving in place policies and procedures that Defendant Nooth knew or should have known resulted in deprivations of inmates' constitutional rights; and

        b.     Acting with deliberate or reckless indifference to the constitutional violations of his subordinates.

62.     The conduct of Defendant Nooth, within his duties as Superintendent of SRCI for DOC and under color of state law, deprived Mr. Hagen of rights, privileges, and immunities secured by the United States Constitution. Specifically, Mr. Hagen was deprived of his constitutional right to be free from cruel and unusual punishment, under the Eighth Amendment of the United States Constitution.

63.     As a result of Defendant Nooth's deprivation of Mr. Hagen's constitutional interests, Mr. Hagen suffered fear, anxiety, and emotional distress, as well as physical injuries that resulted in his death. Plaintiff is entitled to bring this claim pursuant to ORS 30.020(1). Plaintiff, on behalf of the beneficiaries of Mr. Hagen's estate, is entitled to damages for Mr. Hagen's injuries arising out of the deprivation of his constitutional rights in an amount to be determined at trial, but in no event less than $7.5 million.

64.     Plaintiff is also entitled to an award of punitive damages.

65.     Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT GILMORE

(42 U.S.C. § 1983)

66.     Plaintiff realleges paragraphs 1 through 42 as though fully set forth herein.

67.     Mr. Hagen had a right under the Constitution of the United States to be free from cruel and unusual punishment.

68.     At all times relevant to the liability allegations of this Complaint, Defendant Gilmore was acting under the color of law—under the constitutions, statutes, administrative rules, customs, policies, and usages of the State of Oregon and the United States—and had

**Second Amended Complaint**                                                **Page 17**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

assumed the responsibilities, activities, and rights involved in exercising her role as Assistant Superintendent of Security at SRCI.

69. While Mr. Hagen was under the supervision and care of DOC, Defendant Gilmore, in spite of notice of the inadequacy of existing SRCI policies and procedures in protecting inmates who have known conflicts with other inmates and notice of SRCI security personnel's ongoing deliberate indifference to inmate-on-inmate violence at SRCI, acted with deliberate indifference to the known and recognized constitutional and legal right of Mr. Hagen to be free from cruel and unusual punishment by:

    a. Failing to implement procedures to address the repeated failure of SRCI's Security Unit to adequately keep inmates with conflicts separated and otherwise take necessary action to keep inmates safe from the foreseeable risk of harm at the hands of other inmates, such that Mr. Hagen was only one of four inmates murdered by other inmates at SRCI in less than three years, and, instead, leaving in place procedures that Defendant Gilmore knew or should have known resulted in deprivations of inmates' constitutional rights; and

    b. Acting with deliberate or reckless indifference to the constitutional violations of her subordinates.

70. The conduct of Defendant Gilmore, within her duties as Assistant Superintendent of Security at SRCI and under color of state law, deprived Mr. Hagen of rights, privileges, and immunities secured by the United States Constitution. Specifically, Mr. Hagen was deprived of his constitutional right to be free from cruel and unusual punishment, under the Eighth Amendment of the United States Constitution.

71. As a result of Defendant Gilmore's deprivation of Mr. Hagen's constitutional interests, Mr. Hagen suffered fear, anxiety, and emotional distress, as well as physical injuries that resulted in his death. Plaintiff is entitled to bring this claim pursuant to ORS 30.020(1). Plaintiff, on behalf of the beneficiaries of Mr. Hagen's estate, is entitled to damages for

**Second Amended Complaint**                                                                 **Page 18**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Mr. Hagen's injuries arising out of the deprivation of his constitutional rights in an amount to be determined at trial, but in no event less than $7.5 million.

72. Plaintiff is also entitled to an award of punitive damages.

73. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff prays that Defendants be cited to appear and answer herein and that, upon final hearing, Plaintiff have the follow relief:

1. A jury trial to determine the factual questions raised herein;

2. That the Court assume jurisdiction over Plaintiff's claims;

3. On Plaintiff's First Claim for Relief against Defendant Williams, compensatory damages in an amount to be determined at trial but in no event less than $7.5 million, plus punitive damages, attorney fees, costs and disbursements;

4. On Plaintiff's Second Claim for Relief against Defendant Morrow, compensatory damages in an amount to be determined at trial but in no event less than $7.5 million, plus punitive damages, attorney fees, costs and disbursements;

5. On Plaintiff's Third Claim for Relief against Defendant Nooth, compensatory damages in an amount to be determined at trial but in no event less than $7.5 million, plus punitive damages, attorney fees, costs and disbursements;

6. On Plaintiff's Fourth Claim for Relief against Defendant Gilmore, compensatory damages in an amount to be determined at trial but in no event less than $7.5 million, plus punitive damages, attorney fees, costs and disbursements; and

/ / /

/ / /

/ / /

/ / /

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

7. All such other relief as the interests of justice require.

DATED this 19th day of December, 2014.

          KELL, ALTERMAN & RUNSTEIN, L.L.P.

          By s/Dennis Steinman
              **DENNIS STEINMAN**
              954250
              **TED E. RUNSTEIN**
              661052
              **SCOTT J. ALDWORTH**
              113123
              **ZACHARY B. WALKER**
              115461
              503/222-3531
              **Attorneys for Plaintiff**

**Second Amended Complaint**       **Page 20**

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980